Richard E. Boggs
7001 St. Andrews Road 124
Columbia, SC 29212-1137

IN THE DISTRICT COURT OF THE UNITED STATES

DISTRICT OF SOUTH CAROLINA

At Columbia

| | |
|---|---|
| Richard Boggs, Pamela Chapman, James Davis, Leldon Thomas Oates, Michael Lee, Jill Lee, James Loring, Terry Smith, Jerry Larson, Rene Larson, Mark Peters, Robert Orth, Keith Eaton, Allen Rietow, Catherine Rietow, John Jeanne, Launce Kramer, and Riley Kunz,<br>        Plaintiffs, pro se,<br><br>vs.<br><br>UNITED STATES, DEPARTMENT OF TREASURY, IRS COMM'R JOHN KOSKINEN, and INTERNAL REVENUE SERVICE,<br>        DEFENDANTS. | No. 3:16-cv-1178-MGL-SVH<br><br>PLAINTIFFS' OPPOSITION to Magistrate's recommendation for dismissal of complaint. |

## I. INTRODUCTION.

1.1 COMES NOW, Plaintiff Richard Boggs, seeking to oppose the recommendation from Magistrate Hodges (hereinafter "magistrate") that this action be dismissed for a lack of jurisdiction under the provisions of 26 USC § 7421. Service of the magistrate's recommendation upon Plaintiff Richard Boggs was on May 5, 2016. (See 28 USC §§ 636(b)(1); F.R.Civ.P. 6(a), (d), 72(b)). ***Any and all emphasis*** employed herein may be construed to have been added. For very particular reasons this action should be maintained:

OPPOSITION TO Magistrate's recommendation.          Page 1 of 15

A. Of the relief requested by the Plaintiffs under the three different causes of action stated in the complaint, only a fraction seeks an order compelling the Defendants to cease and desist collection. The remainder of the relief sought is not barred by 26 USC § 7421 (Anti-Injunction Act, hereinafter "AIA"). (See ¶¶ 2.1 through 2.3 below).

B. The magistrate's interpretation of the term "tax" as used in the AIA is any amount the IRS says is imposed by law without reference in any way the law itself. This presumption in favor of the IRS violates due process and stands in opposition to a plethora of Supreme Court decisions against being subjected to vague taxing schemes. (See ¶¶ 2.4 through 2.11 below).

C. The standard for injunctive relief outlined by the magistrate is not the standard provided for under the APA (5 USC § 706) which authorizes, and requires, the Court to enjoin agency action in particular instances. (See ¶¶ 2.12 through 2.24 below).

1.2 The broad brush used by the magistrate to justify dismissal of this action bars relief rightfully granted to the Plaintiffs, and is based on a hasty and flawed interpretation of statutory language. Injunctive relief sought pertains only exactions identified by the Court through review under the APA.

## II. ISSUES.

**A. Of the relief requested by the Plaintiffs under the three different causes of action stated in the complaint, only a fraction seeks an order compelling the Defendants to cease and desist collection. The remainder of the relief sought is not barred by 26 USC § 7421.**

2.1 The AIA (26 USC § 7421) prohibits only those actions or that relief which constitutes a "suit for the purpose of restraining the assessment or collection of any tax."

26 U.S. Code § 7421 - Prohibition of suits to restrain assessment or collection.
    (a) Tax. Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), and 7426(a) and (b)(1), 7429(b), and 7436, ***no suit for the purpose of restraining the assessment or collection of any tax*** shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.
    (b) Liability of transferee or fiduciary. No suit shall be maintained in any court for the purpose of restraining the assessment or collection (pursuant to the provisions of chapter 71) of -
        (1) the amount of the liability, at law or in equity, of a transferee of property of a taxpayer in respect of any internal revenue tax, or
        (2) the amount of the liability of a fiduciary under section 3713(b) of title 31, United States Code, in respect of any such tax.

2.2 Relief requested under Plaintiffs' three causes of action is found in the complaint at ¶¶ 3.8, 3.16, and 3.22. **Firstly**, Plaintiffs request relief relative only the Defendants' silence concerning the operation of statutes relevant and essential to the proper calculation of tax liabilities under 26 USC. (See complaint at ¶ 3.8).

> "The Right to Be Informed.- Taxpayers have the right to know what they need to do to comply with the tax laws. ***They are entitled to clear explanations of the laws*** and IRS procedures in all tax forms, instructions, publications, notices, and correspondence. They have the right to be informed of IRS decisions about their tax accounts and to receive clear explanations of the outcomes."

See: [ https://www.irs.gov/Taxpayer-Bill-of-Rights ].

> "I agree with the Court that the Internal Revenue Code provision and the corresponding Treasury Regulations that control consolidated filings are best interpreted as requiring a single-entity approach in calculating product liability loss. I write separately, however, because ***I respectfully disagree with the dissent's suggestion that, when a provision of the Code and the corresponding regulations are ambiguous, this Court should defer to the Government's interpretation***. See *post* this page (opinion of Stevens, J.). ***At a bare minimum, in cases such as this one, in which the complex statutory and regulatory scheme lends itself to any number of interpretations, we should be inclined to rely on the traditional canon that construes revenue-raising laws against their drafter***. See *Leavell v. Blades,* 237 Mo. 695, 700-701, 141 S.W. 893, 894 (1911) ("<u>When the tax gatherer puts his finger on the citizen, he must also put his finger on the law permitting it</u>"); *United States v. Merriam,* 263 U.S. 179, 188 (1923) ("<u>If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer</u>"); *Bowers v. New York & Albany Lighterage Co.,* 273 U.S. 346, 350 (1927) ("<u>The provision is part of a taxing statute; and such laws are to be interpreted liberally in favor of the taxpayers</u>"). Accord, *American Net & Twine Co. v. Worthington,* 141 U.S. 468, 474 (1891); *Benziger v. United States,* 192 U.S. 38, 55 (1904)."

See *United Dominion Industries, Inc. v. United States*, 532 US 822 (2001), J. Thomas concurring. <u>See also</u> *Helvering v. Tex-Penn Oil Co.,* 300 U.S. 481, 498 (1937) ("The taxpayers were entitled to know the basis of law and fact on which the Commissioner sought to sustain the deficiencies."). "But unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." (See *Hutto v. Davis*, 454 US 370, 375 (1982); see also *Hart v. Massanari*, 266 F.3d 1155 *passim* (2001)).

2.3 Plaintiffs' first cause of action requests only the disclosure of the Defendants' interpretation of the provisions that must operate to duly calculate a liability under 26 USC, and does not seek in any way to curtail Defendants from assessment or collection of taxes. This is not relief barred by the AIA. This action should be maintained despite the magistrate's recommendation.

**B. The Court's interpretation of the term "tax" as used in the AIA is any amount the IRS says is imposed by law without reference in any way to the law itself. This presumption in favor of the IRS violates due process and stands in opposition to a plethora of Supreme Court decisions against being subjected to vague taxing schemes.**

2.4 **Secondly**, Plaintiffs ask that the subject collection first be held unlawful, and <u>only then</u> that it be duly set aside and barred under Order of this Court as an exaction as required by the APA. (See complaint at ¶ 3.16).

2.5 **Thirdly**, Plaintiffs ask that the imposition of penalties for failure to file tax returns be held unlawful or unconstitutional, and <u>only then</u> that it be duly set aside and barred as such, as required under the APA. (See complaint at ¶ 3.22).

2.6 Relief relative to enjoining the Defendants' activities would only apply to any amounts imposed unlawfully, unconstitutionally, or for another reason the Court finds under the APA, which would only apply to exactions, to amounts Defendants cannot substantiate under the APA's criteria. Magistrate's recommendation (at p.4) relies upon *Enochs v. Williams Packing & Navigation Co.*, 370 US 1 (1962) to conclude that relief sought is barred by the AIA (26 USC § 7421), but that case holds the AIA to be inapplicable to exactions, to amounts imposed merely "under the guise of a tax." Exactions which are incorrect are, in fact, a crime. (See 26 USC § 7214). In addition, *Enochs* involves unpaid taxes whereas this action involves only sums not yet owed and not yet collected. Plaintiffs have requested only post-deliberation injunctive relief in relation to those amounts the Court has already found to be unlawful, unconstitutional, not applicable, and so on, <u>in the future</u>.

2.7 At the very core of this action or controversy is the fact that statutes essential to the calculation and determination of what is and is not a "tax" are off limits, and the fact that any mention of said statutes evoke from US Tax Court and appellate courts enormous monetary fines for "frivolity."

2.8 Despite these assurances, all who present claims based on the language of **26 USC** §§ 1, 61(a), 83(a), 212, 1001, 1011, 1012, 1402(b), 3121(e), 3306(j), 7621, 7651(4)(A), 7655; **42 USC** § 411(b)(2); **Social Security Act** of 1935 § 211, Pub.L. 74–271, 49 Stat. 620 (August 14, 1935), now codified as 42 USC ch. 7; **1939 Internal Revenue Code** §§ 111, 112, 113, 3811; **26 CFR** 1.1-1, 1.83-3(e), (f), (g), 1.83-4(b)(2), 1.1001-1(a), 1.1011-1(a), 1.1012-1(a), 1.1401-1(a), 1.1402(a)-2(a), 1.1402(b)-1(d), 31.0-2(a)(1), and 31.3121(e)-1(b), are swiftly libeled as and labeled "sovereign citizens, tax protesters, militia extremists," and any number of other epithets, and fines intended to stifle such speech are imposed without mercy or tolerance of any sort or to any degree. This has been the case for more than twenty years.

**Tax Court docket number**:
#11315-94 Chris Bernsdorff was penalized $1000.00 for asking Tax Court to indulge issues concerning applicable provisions, *e.g.*, 26 USC § 83 and others.

#15685-94 Susan Eckles was penalized $3000.00 for asking Tax Court to indulge issues concerning applicable provisions, *e.g.*, 26 USC § 83 and others.

#3176-95 Robert and Mauris Justice were penalized $3750.00 for asking Tax Court to indulge issues concerning applicable provisions, *e.g.*, 26 USC § 83 and others.

#1610-95 Richard and Pamela Bryan were threatened with penalties for asking Tax Court to indulge issues concerning applicable provisions, *e.g.*, 26 USC § 83 and others.

#8766-95 William Santangelo was penalized for asking Tax Court to indulge issues concerning applicable provisions, *e.g.*, 26 USC § 83 and others. (See Memorandum Opinion, filed Oct.2, 1995, pg.13, $2,500.00).

#339-95 Stephen Talmage was penalized $6500.00 for offering to concede all facts in exchange for "how to comply with § 83". (See Order and Decision, 3/11/96, pg.8, 19, 20).

*Santangelo*, **9th Cir**.App. #95-70866, and *Bryan*, **9th Cir**.App. #95-70800, $2000.00 each.

2.9 Never a reference to, or analysis of, 26 CFR 1.83-3(g)'s definition of "amount paid," or of 26 CFR 1.1012-1(a)'s "cash or other property." While the Defendants are quick to reject § 83 reliance on the part of a litigant they are loathe to *prove* invalid the interpretation shared by the Plaintiffs. The Defendants are quick to reject the allegation that 26 CFR 1.1-1 deviates from § 1 by naming citizens of the United States as a subject of the § 1 tax where the statute mentions no one of any citizenship whatsoever, but there is never any analysis or

discussion as to *how* the contention is invalid. Such decisions regarding these provisions are every bit as caustic as the exactions resulting from Defendants' misenforcement of the law. COMPARE *Strom v. US*, 641 F. 3d 1051 (CA9 2011) (full indulgence of 26 CFR 1.83 regulations) to *Baker v. CIR*, 70 T.C.M. 1018 (1995) (T.C. Memo. 1995-495). The former concerns 26 USC § 83 and the regulations thereunder as they relate to 26 CFR 1.83-7. Much is made of the language and operation of the regulations, under § 83, and they are relied upon to dispose of the controversy. The latter, however, is a case where an individual sought to apply § 83 to the average paycheck, fee, commission, or self employment earnings. Diatribe and demeaning degradation is readily dispensed upon the petitioner in that case and the decision was void of any discussion of the language of § 83, and of 26 CFR 1.83-3(g), 1.83-4(b)(2), and §§ 1001, 1011, and 1012 and the regulations thereunder.

2.10 A tax must be imposed by clear and unequivocal language. Where the construction of a tax law is doubtful, the doubt is to be resolved in favor of whom upon which the tax is sought to be laid. (See *Spreckles Sugar Refining v. McClain*, 192 U.S. 397, 416 (1904); *Gould v. Gould*, 245 U.S. 151, 153 (1917); *Smietanka v. First Trust & Savings Bank*, 257 U.S. 602, 606 (1922); *Lucas v. Alexander*, 279 U.S. 573, 577 (1929); *Crooks v. Harrelson*, 282 U.S. 55 (1930); *Burnet v. Niagra Falls Brewing Co.*, 282 U.S. 648, 654 (1931); *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 508 (1932); *Gregory v. Helvering*, 293 U.S. 465, 469 (1935); *Hassett v. Welch*, 303 U.S. 303, 314 (1938); *U.S. v. Batchelder*, 442 U.S. 114, 123 (1978)).

2.11 None of these decisions say that litigation must precede an individual's being relieved of a burden under a doubtful tax statute. Due process requires that the Defendants cease any such unconstitutional collection activities without regard to where or when they occur. When the Defendants cannot substantiate their demands purportedly under 26 USC chapters 1, 2, 21, and 23, the APA and these decisions provide and require, <u>post-deliberation</u>, that Defendants be enjoined. This is not relief barred by the AIA. This action should be maintained despite the magistrate's recommendation.

///
///
///
///
///

**C. The standard for injunctive relief outlined by the magistrate is not the standard provided for under the APA (5 USC § 706) which authorizes, and requires, the Court to enjoin agency action in particular instances.**

2.12 Plaintiffs <u>have not</u> requested preemptive injunctive relief. All injunctive relief requested is that to occur only after analysis and deliberation by this Court, and that which congress has required under the APA.

> 5 USC § 706 Scope of review.- To the extent necessary to decision and when presented, the reviewing court <u>shall decide</u> all relevant questions of law, <u>interpret</u> constitutional and statutory provisions, and <u>determine</u> the meaning or applicability of the terms of an agency action. The reviewing court <u>shall</u> -
> (1) ***compel agency action unlawfully withheld or unreasonably delayed***; and
> (2) ***hold unlawful and set aside agency action, findings, and conclusions found to be*** -
> (A) ***arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law***;
> (B) ***contrary to constitutional right, power, privilege, or immunity***;
> (C) ***in excess of statutory jurisdiction, authority, or limitations, or short of statutory right***;
> (D) ***without observance of procedure required by law***;
> ((E) and (F) omitted as irrelevant)

2.13 The magistrate cites *Enochs* (370 US 1, 6-7 (<u>1962</u>)) when stating that injunctive relief is unavailable under the two-prong test articulated therein. Plaintiffs have sought relief solely under the APA (Pub.L. 89-554, Sept. 6, <u>1966</u>) and have not invoked the AIA as the source of the relief sought. The APA requires only that the action against which relief is sought be proven to possess one or more of the attributes listed therein, where there is no requirement for Plaintiffs to meet the specific threshold articulated in *Enochs*. It is clear that the *Enochs* threshold, which predates the APA, could not have included or arisen from a reflection upon the language of the APA and its authorization of "compel agency action" and "hold unlawful and set aside agency action." In this instance, any reliance upon *Enochs* is an improper course which nullifies the operation of the <u>post deliberation</u> relief provided for, and required of the Court, under 5 USC § 706.

2.14 There is a fascinating notion articulated in *Enochs*, however, that speaks directly to whether the AIA can bar a suit in which the invalidity of an assertion that amounts to be collected are indeed a "tax":

"The enactment of the comparable Tax Injunction Act of 1937, 50 Stat. 738, now, as amended, 28 USC § 1341, forbidding the federal courts to entertain suits to enjoin collection of state taxes "where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State," throws light on the proper construction to be given § 7421(a). It indicates that if Congress had desired to make the availability of the injunctive remedy against the collection of federal taxes not lawfully due depend upon the adequacy of the legal remedy, it would have said so explicitly. Its failure to do so shows that such a suit may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise. This is not to say, of course, that inadequacy of the legal remedy need not be established if § 7421(a) is inapplicable; indeed, the contrary rule is well established. See, *e.g.*, *Matthews v. Rodgers*, 284 US 521; *Miller v. Standard Nut Margarine Co., supra*; *Dows v. Chicago*, 11 Wall. 108. However, since we conclude that § 7421(a) bars any suit for an injunction in this case, we need not determine whether the taxpayer would suffer irreparable injury if collection were effected.

The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. (fn.6 omitted). ***Nevertheless, if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and***, under the *Nut Margarine* case, ***the attempted collection may be enjoined*** if equity jurisdiction otherwise exists. ***In such a situation the exaction is merely in*** "<u>the guise of a tax</u>." *Id.*, at 509.

We believe that the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit. ***Only if it is then apparent that, under the most liberal <u>view of the law</u> and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained***. Otherwise, the District Court is without jurisdiction, and the complaint must be dismissed. To require more than good faith on the part of the Government would unduly interfere with a collateral objective of the Act - protection of the collector from litigation pending a suit for refund. And to permit even the maintenance of a suit in which an injunction could issue only after the taxpayer's nonliability had been conclusively established might "in every practical sense operate to suspend collection of the . . . taxes until the litigation is ended." *Great Lakes Dredge & Dock Co. v. Huffman*, 319 US 293, 299. ***Thus, in general, the Act prohibits suits for injunctions barring the collection of federal taxes <u>when</u> the collecting officers have made the assessment and claim that it is valid***. *Snyder v. Marks*, 109 US 189, 194.

<u>The record before us clearly reveals that the Government's claim of liability was not without foundation</u>. Therefore, we reverse the judgment of the Court of Appeals and remand the case to the District Court with directions to dismiss the complaint. **Reversed.**"

2.15 *Arguendo*, even if the *Enochs* test cited by the magistrate was relevant to the APA's authorization of <u>post deliberation</u> judicial intervention, the test applies only when

collecting officers have made an assessment and claim it is valid, which has not happened in this case. In addition, an exaction may be enjoined, a claim *under the guise of a tax* is outside the scope of the AIA. How has the magistrate interpreted "the law" to arrive at the conclusion that, under *Enochs*, a claim has been established? The Plaintiffs are entitled to at least disclosure of this requisite to dismissal under the AIA, but the Defendants have been unable to do this for twenty-three years. To dismiss this action prior to the Defendants' having proven its "foundation" for a claim of liability it has yet to even make violates even the *Enochs* standard employed by the magistrate.

2.16 It's been established that the IRS does not train on, apply, or care in the least, about the language of the provisions at the heart of this controversy. As it relates to compensation for services, the IRS, the DOJ, and the Courts use only the following provisions:

> "The Meltons maintain that they relied on federal case law and other materials to determine that they were not required to file federal income tax returns. They claim that they read a notice issued by the IRS which led them to the Internal Revenue Code, 26 U.S.C. § 1 et seq. There, sections 6001 and 6011 explained that only "persons liable" must pay income taxes. ***The Meltons claim that, from Supreme Court cases and other documents, they learned that the income tax is an excise tax for which, as housepainters, they could not be held liable***.
> While courts may have offered differing views of the income tax over time, the United States Supreme Court has consistently interpreted the federal income tax for 80 years. Since 1916, the Court has construed the tax as an indirect tax authorized under Article I, Section 8, Clause I of the U.S. Constitution, as amended by the Sixteenth Amendment. See *Brushaber v. Union Pacific R.R. Co.*, 240 U.S. 1, 11, 16-19 (1916). ***Federal courts have all agreed that wages or compensation for services constitute income and that individuals receiving income are subject to the federal income tax - regardless of its nature***. See, *e.g.*, *Brushaber*, 240 U.S. at 17; *United States v. Sloan*, 939 F.2d 499, 500-01 (7th Cir. 1991), cert. denied, 502 U.S. 1060 (1992); *Simmons v. United States*, 308 F.2d 160, 167-68 (4th Cir. 1962). ***In short, the debate over whether the income tax is an excise tax or a direct tax is irrelevant to the obligation of citizens to pay taxes and file returns***. *Simmons*, 308 F.2d at 166 n.21 (***stating that*** "*it has been clearly established that the labels used do not determine the extent of the taxing power*").
> ***Furthermore, the duty to file returns and pay income taxes is clear. Section 1 of the Internal Revenue Code imposes a federal tax on the taxable income of every individual. 26 U.S.C. § 1***. Section 63 defines "taxable income" as gross income minus allowable deductions. 26 U.S.C. § 63. ***Section 61 states that "gross income means all income from whatever source derived," including compensation for services. 26 U.S.C. § 61***. Sections 6001 and 6011 provide that a person must keep records and file a tax return for any tax for which he is liable. 26 U.S.C. §§ 6001 & 6011. ***Finally, section 6012 provides that every individual having gross income that equals or exceeds the***

***exemption amount in a taxable year shall file an income tax return. 26 U.S.C. § 6012. The duty to pay federal income taxes therefore is "manifest on the face of the statutes, without any resort to IRS rules, forms or regulations."*** United States v. Bowers, 920 F.2d 220, 222 (4th Cir. 1990). The rarely recognized proposition that, "where the law is vague or highly debatable, a defendant - actually or imputedly - lacks the requisite intent to violate it," *Mallas*, 762 F.2d at 363 (quoting *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974)), simply does not apply here."

See *US v. Melton*, #94-5535 (CA4 **May 22, 1996 Unpublished**) (USDC #CR-93-34 W.D. North Carolina at Shelby).

2.17 Here we see no reference to 26 USC §§ 83, 212, 1001, 1011, or 1012 when they are, in fact, the controlling statutes for the purposes of determining what is and is not gross income when property is transferred in connection with the performance of services of self employed individuals and employees. The Defendants have had more than twenty-three years to prove these provisions have operated, while court after court, the IRS, and US Tax Court hold them relevant to every penny of compensation paid for services.

2.18 "Section 83(a) explains how property received in exchange for services is taxed." [1] Section 83 applies to all compensation paid for services of corporations, and for the services of individuals. [2] Labor is property. [3] The fair market value ("FMV") of property is established through the terms of an "arm's length transaction." [4]

> "At the heart of this case is I.R.C. ***§ 83, which governs the taxation of property transferred in connection with the performance of services***."

See *Gudmundsson v. US*, 634 F.3d 212 (CA2 2011).

> 26 CFR 1.83-3(g) Amount paid. For the purposes of section 83 and the regulations thereunder, the term "***amount paid***" refers to the value of ***any money or property*** paid for the transfer of property to which § 83 applies.

---

[1] See *Montelepre Systemed, Inc. v. C.I.R.*, 956 F.2d 496, 498 at [1] (CA5 1992).
[2] See 26 CFR 1.83-3(e), (f); *MacNaughton v. C.I.R.*, 888 F.2d 418 (CA6 1989); *Pledger v. C.I.R.*, 641 F.2d 287 (CA5 1981); *Alves v. C.I.R.*, 734 F.2d 478, 481 (CA9 1984); *Klingler Electric Co. v. C.I.R.*, 776 F.Supp. 1158, 1164 at [1] (S.D.Miss. 1991); *Robinson v. C.I.R.*, 82 USTC 444 (1984); *Cohn v. C.I.R.*, 73 USTC 443, 446 (1979).
[3] See *Butcher's Union Co. v. Crescent City Co.*, 111 U.S. 746, 757 (1883); *Slaughterhouse Case*, 83 U.S. 395, 419; 16 Wall. 36-130 (1873); *Adair v. U.S.*, 208 U.S. 161, 172 (1908); *Coppage v. Kansas*, 236 U.S. 1 (1915); *Black's*, 6th, "property."
[4] See 27 CFR 70.150(b); *U.S. v. Cartwright*, 411 U.S. 546, 552 (1973); *Hicks v. U.S.*, 335 F.Supp. 474, 481 (Colo.1971); *Pledger v. C.I.R.*, supra; *Black's*, 6th, "Arm's length transaction."

OPPOSITION TO Magistrate's recommendation.                                    Page 10 of 15

2.19 The US government has won in the U.S. Supreme Court on four occasions arguing that the statutory terms "any" and "any property" are all inclusive unless the law provides for an exclusion of something from the item or class of thing, property, or matter to which said term(s) applies. (See *U.S. v. Monsanto*, 491 U.S. 600, 607-611 and (syllabus) (**1989**); *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (**1994**); *U.S. v. Gonzales*, 520 U.S. 1, 4-6 (**1997**); *Department of Housing and Urban Renewal v. Rucker*, 535 U.S. 125, 130-31 (**2002**) citing *Gonzalez* and *Monsanto*). The IRS' exclusion of the value of personal services from "the value of any money or property paid," and from "cash or other property," is arbitrary, a fortiori, it is impermissible. The *Talmage* court cited no such exception provided by law. This interpretation of "any" is universal. See decisions citing Gonzales, *id.* "any" is expansive and all inclusive: *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228, 128 S.Ct. 831, 835-36 (**2008**); *Ashland Hospital Corp. v. RLI Ins. Co.*, Civil #13-143-DLB-EBA (E.D. Kentucky, Northern Division, Ashland, March 17, **2015**); *Electronic Privacy Center v. U.S. Dept. of Homeland Security*, 777 F.3d 518, 525 (CA Dist. Columbia February 10, **2015**); *Florida Health Sciences Center v. Sec. of U.S. Dept. of Health and Human Svcs.*, Civil #14-0791 (ABJ) (USDC of D.C. March 31, **2015**); *Florez v. Holder, U.S. Attorney General*, Civil #14-874 (CA2 March 4, **2015**); *United States v. Kaluza*, #14-30122 (CA5 March 11, **2015**); *United States v. Shill*, 740 F.3d 1347, 1352 (CA9 January 14, **2014**); *United States v. Weisinger*, #13-3655-cr (CA2 October 6, **2014**); *Arcia v. Florida Sec. of State*, 746 F.3d 1273, 1281 (CA11 April 1, **2014**); *In re Bernard Madoff Investment Securities, LLC v. IDA Fishman Revocable Trust*, #12-2557-bk(L) (CA2 December 8, **2014**); *Natural Resources Defense Council v. Environmental Protection Agency*, 755 F.3d 1010, 1019 (CA D.C. June 27, **2014**); *WNET, et al. v. Aero, Inc., et al.*, 722 F.3d 500, 510 (CA2 July 16, **2013**); *PBBPC, Inc. v. OPK Biotech, LLC*, 484 B.R. 860, 868 (Jan 17, **2013**); *Harkness v. United States*, 727 F.3d 465, 471 (CA6 July 11, **2013**).

> "The determinative issue is therefore whether the phrase "any status" imposes an additional requirement that an alien must satisfy in addition to being admitted to the United States. We find no basis for so concluding. Although the word "status" is not defined in the INA, its general meaning is "[a] person's legal condition." BLACK'S LAW DICTIONARY 1542 (10th ed. 2014); see also MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1220 (11th ed. 2007) (defining "status" as "the condition of a person or thing in the eyes of the law"). ***In conjunction, it is well settled that "the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind."*** *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008)

(quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)); see also *HUD v. Rucker*, 535 U.S. 125, 131 (2002); *United States v. Clayton*, 613 F.3d 592, 596 (5th Cir. 2010); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 56 (11th ed. 2007). ***The use of the word "any" to modify a term "suggests a broad meaning."*** *Ali*, 552 U.S. at 218-19; see also *Clayton*, 613 F.3d at 596 ("The CCPA uses ***the modifier 'any' in describing the tax debts to which it applies, a term we must construe as 'broad' and 'ha[ving] an expansive meaning.'***" (quoting *Ali*, 552 U.S. at 219)). ***The Supreme Court has therefore explained that where, as here, Congress "did not add any language limiting the breadth of [the] word," any "must" be read "as referring to all"*** *of the type to which it refers*. *Gonzales*, 520 U.S. at 5; see also *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997). ***In other words, far from being further limiting, the word "any" is expansive.***"

See *Rubio v. Lynch, US Attorney General*, #14-60183 (CA5 May 21, **2015**). **And -**

"Specifically, *Blixt* tacitly relied on the so-called "general-terms canon" that holds that "[g]eneral terms are to be given their general meaning." *Scalia & Garner*, *supra*, at 101 (boldface omitted). ***We agree with Blixt that, when Congress used the general term "any" to modify the term "name," it meant to give that term an "expansive" meaning***. *Blixt*, 548 F.3d at 887; see, *e.g.*, *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan*, Inc., 727 F.3d 1246, 1267 (10th Cir.2013) ("***Read naturally, the word 'any' has an expansive meaning....***" (quoting *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008)) (internal quotation marks omitted)), pet. for cert. filed, 82 U.S.L.W. 3307 (U.S. Nov. 8, 2013) (13-576); *United States v. S. Half of Lot 7 & 8, Block 14, Kountze's 3rd Addition to the City of Omaha*, 910 F.2d 488, 489 (8th Cir.1990) (*en banc*) ("Congress's use of the word `any' to describe property `undercuts a narrow[er] construction.'" (alteration in original) (quoting *United States v. James*, 478 U.S. 597, 605, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986)))."

See *United States v. Porter*, 745 F.3d 1035 (CA10 March 6, **2014**). **And -**

"***The terms "whoever" and "any" are expansive***. See, *e.g.*, *Freeman v. Quicken Loans, Inc.*, 566 U.S. ___, ___, 132 S.Ct. 2034, 2042, 182 L.Ed.2d 955 (2012) (explaining the term "any" "has an `expansive meaning,'" that "can broaden to the maximum, but never change in the least, the clear meaning of the phrase selected by Congress") (quoting *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 131, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002)); *United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) ("***Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'***") (quoting Webster's Third New International Dictionary 97 (1976)); United States v. Lucien,347 F.3d 45, 51 (2d Cir.2003) (rejecting a defendant's proposed construction of a statute that limited punishment for healthcare fraud to healthcare professionals because the statute applied to "whoever" committed such fraud and the common meaning of "whoever" was "whatever person, any person at all, no matter who") (quoting Webster's Third New International Dictionary 2611 (1981)) (internal quotation marks omitted); *United States*

> *v. Khatib*, 706 F.2d 213, 218 (7th Cir.1983) (rejecting a defendant's proposed status limitation on the term "whoever" in 7 U.S.C. § 2024(b)(1) because the statutory language was not restrictive)."

See *United States v. Jungers*, 702 F.3d 1066, 1070 (CA8 January 7, **2013**). **And -**

> "The statute's surrounding text also assists in interpreting the meaning of "real and personal property" as used in § 1521. ***The statute's repetition of the indefinite determiner "any" signals an intended broad and expansive application of the statute.*** See *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (noting ***the word "any" has expansive meaning, "one or some indiscriminately of whatever kind"***). In § 1521, ***the word "any" modifies where an individual is prohibited from filing-in any public record or in any private record*** (which is generally available to the public). See 18 U.S.C. § 1521. ***"Any" also modifies what is prohibited.***"

See *United States v. Neal*, #12-10454 (CA9 January 12, **2015**).

See Internet: http://cdn.ca9.uscourts.gov/datastore/opinions/2015/01/12/12-10454.pdf

    2.20 In reviewing U.S. Tax Court's disposition of the 26 USC § 83 claim, below, we recall that <u>its restrictive application</u> of the term "any" allowing *some* property (labor, property with no tangible basis or cost) to be excluded under 26 CFR's 1.83-3(g)'s reference to "any money or property" <u>was its only exculpatory reasoning</u> or thread of logic to overcome the claim. In the cases above, Tax Court's reasoning (below) regarding "any property" is clearly dismembered as arbitrary and therefore impermissible. <u>The correct answer</u> is *Talmage v. Comm'r of IRS*, USTC docket #339-95, 71 T.C.M. 2370 (1996):

> "Because the issues are purely legal, this case is ripe for summary judgment. Tax protester arguments like the claim that wages are not taxable income also suffice (as an alternative to dismissal, and in the absence of better argument) to justify summary judgment for the respondent. (protester cite omitted). Even if wages are, in effect, an exchange of value for equal value, they are nevertheless taxable income. (protester cite omitted) And even if we apply section 1001, his basis is determined under sections 1011 and 1012 as his cost, not fair market value. ***Since he paid nothing for his labor, his cost and thus his basis are zero.*** (protester cite omitted) Consequently, even under section 1001, his taxable income from his labor is his total gain reduced by nothing, *i.e.*, his wages.
> 
> "Petitioner's primary argument is that section 83, Property Transferred in Connection with the Performance of Services, has the effect of exempting his wages from income tax because it requires us to apply section 1012, which specifies that cost should be used to determine the basis of property (unless the Code provides otherwise) to determine the extent to which wages constitute taxable income. Petitioner asserts that he "paid" for his wages with his labor and that section 83 allows the value of his labor as a cost to be offset against his wages, thereby exempting them from tax. Section 83 provides that property

received for services is taxable to the recipient of the property to the extent of its fair market value minus the amount (if any) paid for the property. In attempting to equate his wages with property for which he has a tax cost, petitioner's argument is nothing more than a variation of the wages-are-not-income claim frequently advanced by tax protesters, and it is completely without merit. (protester cites omitted) Petitioner's argument fails for the same reason that other protester's arguments fail; *the worker's cost for his services- and thus his basis-is zero, not their fair market value.*"

*****End quote** from *Talmage* in US Tax Court. The appeal:

"Stephen V. Talmage appeals from the tax court's orders (1) entered March 11, 1996, granting summary judgment to the Commissioner and imposing a penalty under 26 U.S.C. § 6673(a)(1)(B) (1994) for pursuing a frivolous action in tax court; and, (2) entered April 17, 1996, denying his motion for reconsideration. *We affirm, based on the reasoning of the tax court.*"

See *Talmage v. Comm'r of IRS*, 101 F.3d 695 (CA4 Nov. 15, 1996) (unpublished decision).

2.21 While Tax Court articulated a line of reasoning, it failed to cite the provisions of law which allows it to exclude something from "any money or property." Defendants will again fail to disclose how they apply and comply with § 83(a) in relation to Plaintiffs' compensation. Defendants claim to have a reason for exclusion personal services (sacred property) from cost, but they can cite no lawful authority for doing so. The Defendants' exclusion of *some property* from "any money or property" is arbitrary, *a fortiori*, it is impermissible. This is the "frivolous" contention the Defendants have flatly refused to address for more than two decades.

2.22 Until such time as the Defendants are able to prove the proper application of these provisions in any claim that Plaintiffs owe what they pay and are paying, the subject liabilities must be held to be an exaction for which injunctive relief under both the AIA and APA is available.

2.23 Dismissal based on the AIA would be undue without a showing of the requisite assessment and claim of validity by the "collecting officers," and the proof of a valid foundation for the claim of liability. Without proof that relevant statutes have been allowed to operate, the magistrate's use of the term "tax" wrongfully includes "under the guise of tax" when such instances are, in fact, not subject to the AIA's bar against actions seeking restraint against founded claims of tax liabilities.

2.24 Plaintiffs have not requested preliminary injunctive relief. The relief requested would be the result of, and not prior to, the litigation of the claims or causes of action in the

complaint. The magistrate has not articulated any valid basis for dismissal of this action as one which seeks to restrict or bar the assessment or collection of taxes. This action should therefore be maintained despite the magistrate's recommendation to the contrary.

**Alternative relief**:

2.25 Alternatively, Plaintiffs request that this Court identify which aspects of the relief requested offends the AIA and allow the filing of an amended complaint pursuant to F.R.Civ.P. 15. Plaintiffs further request that any relief which <u>does not</u> seek compulsion or restraint of agency action be sustained and allowed to remain intact and that this action be allowed to move forward.

### III. <u>CONCLUSION</u>.

2.26 It is clear that the AIA's focus is upon instances concerning claims of unpaid taxes and actions commenced during collections attempts made and relative to which distraint is authorized. This action, however, focuses on future collection activities that the Court finds to be reliant upon mere *exactions* under terms against which the Plaintiffs have a due process right. Vague statutes or unsubstantiated assertions of lawful duties give rise to the relief sought as a matter of law and due process. The AIA, in *Enochs*, is held to be inapplicable to such instances.

2.27 This action should be allowed to move forward despite the magistrate's recommendation that is be dismissed as one barred by the AIA at 26 USC § 7421.

Respectfully submitted:

/s/ Richard E. Boggs
Richard E. Boggs

**CERTIFICATE OF SERVICE**:
I, Mitchell Jesso, do hereby certify that I placed in 1st class US Post and in adequate packaging this Opposition to Magistrate's recommendation addressed to: Robin L. Blume, Clerk, United States District Court, 901 Richland Street, Columbia, SC 29201. I am an American over the age of eighteen years.

_____     5/13/2016
Signature                  Date

OPPOSITION TO Magistrate's recommendation.                         Page 15 of 15

# CERTIFICATE OF SERVICE

**Republic/State of __South Carolina_____ )**
**Subscribed and Affirmed                       )**
**County of_____Lexington_____ )**

I, __Mitchell/Jose_____, the undersigned mailer/server, being of sound mind and under no duress, do hereby certify, attest and affirm that the following facts are true and correct, to wit:

1. That, on the __13th May__ 2016, that, on behalf of __Richard E. Boggs__, a human being, the undersigned personally deposited the following documents (listed below) inside the envelope, sealed them and transmitted them via the carrier indicated in item 2 below, to wit:

| Item # | Document Description | Number of pages |
|---|---|---|
| 1 | Opposition to Recommendation to Dismiss Amended Civil Complaint (3:16-cv-1178-MGL-SVH  ) | 15 |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |

Total of _1_ documents with combined total of ___15____ pages.

2. That I personally mailed said document(s) via:

_____United States Postal Office, by regular mail, postage prepaid
__X__United States Postal Office, by **Certified Mail #** _7012  1010  0002  6865  9372_
       Return Receipt Requested
_____United Parcel Service (UPS), tracking number # _____
_____Federal Express, tracking number # _____
_____Other (specify): _____

at said City and State, one (1) complete set of **ORIGINAL**/COPIED (circle one) documents, as described in item 1 above, properly enveloped and addressed to (addressee(s) and address(es)):

| # | Recipient(s) |
|---|---|
| 1 | Robin L. Blume, Clerk<br>United States District Court<br>901 Richland Street<br>Columbia, South Carolina 29201 |

*Certificate/Proof/Affidavit of Service*                                                          Page 1 of 2

3.  That I am at least 18 years of age;

4.  That I am not related to __Richard E. Boggs__ by blood, marriage, adoption, or employment, but serve as a "disinterested third party" (herein "Server"); and further,

5.  That I am in no way connected to, or involved in or with, the person and/or matter at issue in this instant action.

I now affix my signature to these affirmations.

(Signature): _____, Mailer/Server
(Printed name): __Zach Greenwell__

## NOTARY PUBLIC'S JURAT

Subscribed and sworn to (or affirmed) before me on this __13th__ day of __May__, 20__16__, by __Richard E. Boggs__, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me

WITNESS my hand and official seal.

_____ SEAL
Notary Public

My Commission Expires On:
2-18-2026

